Roosevelt HUDSON, Jr., Bruce Dye, William Martin-El, Charles Henderson, Plaintiffs,

v.

Perry JOHNSON, individually and in his capacity as Director of the Michigan Department of Corrections,

Barry Mintzes, individually and in his capacity as Regional Administrator of Southern Michigan Prison,

Daniel Trudell, individually and in his capacity as Deputy Warden of Southern Michigan Prison,

Duane Sholes, individually and in his capacity as Deputy Warden of Southern Michigan Prison,

Tom Taylor, individually and in his capacity as Resident Unit Manager of Southern Michigan Prison,

Tim Bailey, individually and in his capacity as Resident Unit Manager Aid of Southern Michigan Prison,

Tom Wojton, individually and in his capacity as Resident Unit Manager Aid of Southern Michigan Prison,

Larry Burkhart, individually and in his capacity as Correctional Specialist of Southern Michigan Prison,

Simon Morris, individually and in his capacity as Correctional Specialist of Southern Michigan Prison,

Frank J. Kelly, individually and in his capacity as Attorney General for the State of Michigan, Defendants.

No. 81 71171.

United States District Court, E.D. Michigan, S.D.

Oct. 21, 1985.

William D. Martin-El, Roosevelt Hudson, Bruce Dye, Charles Henderson, plaintiffs in pro per.

Robert Willis, Jr. Asst. Atty. Gen., Lansing, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

Plaintiffs in this 42 U.S.C. § 1983 action are Roosevelt Hudson, Jr., Bruce Dye, William Martin-El and Charles Henderson; all of whom were inmates at the State Prison of Southern Michigan (SPSM) at the time the complaint was filed. Plaintiffs allege that various officials and employees of the Michigan Department of Corrections and the State Attorney General violated plaintiffs' constitutional rights in connection with the following chain of events.

On January 17, 1981, while all plaintiffs were residents of housing unit number 7, defendant Burkhart confiscated a 10 and ½ inch long prison-made weapon similar to an ice pick from a trash container located on the unit. Approximately ten minutes later, while both were working at a desk in a common area, defendant Burkhart, apparently in an attempt to gain plaintiff Dye's attention, poked him in his side twice with the weapon. It is also alleged that defendant Morris, the officer in charge of unit 7 at the time, witnessed the incident but made no attempt to prevent it; nor did he report it.

Plaintiffs Martin-El and Henderson witnessed the incident and conferred with plaintiff Dye regarding what action to take to prevent this type of conduct. Plaintiff Dye, with the help of plaintiff Hudson (who was not a witness to the incident), wrote a grievance and gave it to plaintiff Hudson. Plaintiffs Dye, Martin-El and Henderson executed written statements regarding the assault in the presence of Department of Corrections' investigators.

On January 21, 1981, plaintiff Dye was transferred to Northside Complex. Prior to the transfer, plaintiffs allege that defendant Taylor called plaintiffs Dye and Hudson into his office and demanded that they give him the grievance. Plaintiffs refused and the grievance was sent to Lansing in accordance with Dye's wishes. While being escorted to Northside Complex, plaintiff Dye alleges that defendant Trudell repeatedly suggested that he drop the grievance and forget about the incident.

Plaintiffs further alleged that on the morning of January 21, 1981, defendant Burkhart threatened plaintiff Martin-El, telling him to expect future harassment. That afternoon, Martin-El received a ticket from Burkhart for possession of non-dangerous contraband and a warning or threat that this was the first of many tickets he would receive. On the same day, plaintiffs claim that for no apparent reason, plaintiff Henderson was searched four times by defendant Burkhart and his cell also was repeatedly searched. Plaintiff Hudson alleges that defendant Morris has threatened him and plaintiff interprets these threats to mean he will be killed. He informed defendants Johnson, Mintzes and Kelley of his need for protection from retaliation but received no response.

An administrative investigation of the incident involving defendant Burkhart and the ice pick was conducted under the direction of defendant Trudell. As a result of the investigation, defendant Burkhart was given a written reprimand and a transfer to a different housing unit.

Plaintiffs claim violation of their First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendment rights. They allege denial of access to the courts, pain, suffering, psychological distress, deprivation of medical attention and denial of meaningful rehabilitation as a result of their fear of retaliation. They specifically allege that they have been denied equal protection and due process of law by Attorney General Frank Kelley in his dereliction of the duty to protect them. Plaintiff Dye asserts that his transfer to another housing unit resulted in denial of his rights to education and employment with resultant loss of earnings. Plaintiffs seek injunctive and declaratory relief and damages of one billion dollars.

Defendants have filed a motion for judgment on the pleadings seeking dismissal pursuant to Federal Rule of Civil Proce-

dure 17(a), asserting that plaintiff Dye is the only plaintiff who is a real party in interest because he is the only party who can claim injury.

Dismissal on these grounds, however, is improper.

> [W]hen governmental action is attacked on the ground that it violates private rights or some constitutional principle, the question whether the challenger is a proper party plaintiff to assert the claim rarely is analyzed in terms of real party in interest or capacity principles.

6 Wright & Miller, § 1542 (1971) and Supp. 1985.

> To determine whether the requirement that the action be brought by the real party in interest has been satisfied, the court must look to the substantive law creating the right being sued upon to see if the action has been instituted by the party possessing the substantive right.

*Id.* § 1544.

Plaintiffs Hudson, Martin-El and Henderson brought this action pursuant to 42 U.S.C. § 1983 which imposes liability on persons acting under color of state law for injuries resulting from actions which deprive others of their constitutional rights. All plaintiffs in this case have clearly alleged constitutional deprivation. The sufficiency of their claims is properly challenged in a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to F.R.C.P. 12(b)(6) or in a motion for summary judgment pursuant to F.R.C.P. 56. Thus, the court will analyze plaintiffs' allegations in accordance with the governing law applicable to those provisions.

The complaint does not specify which constitutional provision plaintiffs believe was violated by defendant Burkhart's alleged assault on plaintiff Dye. Construing the complaint liberally as it must under *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the court will assume that plaintiff Dye is asserting a claim under the Eighth Amendment's prescription against cruel and unusual punishment.

In *Estelle v. Gamble,* 429 U.S. 97, 102, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976), the Supreme Court established the standard for evaluating Eighth Amendment claims as "punishments which are, incompatible with 'the evolving standards of decency that mark the progress of a maturing society,' (citations omitted) or which 'involve the unnecessary and wanton infliction of pain' (citation omitted)."

Plaintiff Dye's complaint states no such injury. He does not allege an attempt on defendant Burkhart's part to physically injure him. In his affidavit of July 21, 1981, plaintiff Dye states: "defendant Burkhart assaulted me with that 10 and ½ inch prison made knife to cause me fear of harm not physical harm but mental anguish, if his intention were to merely gain my attention he could have used his free arm for that ..."

Defendant Burkhart, in his sworn affidavit asserts that indeed it was his intention to gain plaintiff's attention. Plaintiff Martin-El's written statements on January 19 and 21, 1981 support defendant Burkhart's assertion of intent. Martin-El describes Burkhart as smiling, refers to his manner as "joking or playing" and even his condemnation of the action is characterized as "irresponsible" and "disrespectful" rather than hostile. Plaintiff Henderson's statement is similar. Likewise, in a letter to defendant Johnson, plaintiff Hudson states that the jab or poke did not break plaintiff Dye's skin and that defendant Burkhart laughed the incident off.

In *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), the court found that a prisoner's allegation that an officer rushed into his cell, grabbed him by the collar and struck him twice in the head with something enclosed in his fist, stated a claim under the Eighth Amendment. In reaching its decision the court stated:

> Certainly the constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action for battery, which makes actionable any in-

tentional and unpermitted contact with the plaintiff's person or anything attached to it (citation omitted) ...; still less is it as extensive as that afforded by the common law tort action for assault, redressing 'Any act of such a nature as to excite an apprehension of battery' (citation omitted). Although 'the least touching of another in anger is a battery,' (citation omitted) it is not a violation of a constitutional right actionable under 42 U.S.C. § 1983.... Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violated a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Id.* at 1033.

A case within this circuit which relied upon *Johnson* is particularly applicable to the case now before the court. In *Howse v. DeBerry Correctional Institute*, 537 F.Supp. 1177 (M.D.Tenn.1982), the complaint alleged that one prison employee shoved plaintiff and grabbed him so tightly by his shirt front that he suffered pain, and that another employee similarly grabbed plaintiff, pushed him down a corridor and poked him "harshly" in the chest while threatening him. In light of the Second Circuit's reasoning in *Johnson*, the court determined that it must examine the totality of the factual setting in which the alleged constitutional violation occurred. After balancing all the factors and "considering especially the fact that plaintiff was in no way injured," the court found no constitutional deprivation. *Howse*, at 1182.

Similarly, in *Cotton v. Hutto*, 540 F.2d 412 (8th Cir.1976), the court dismissed a claim based on allegations that "sadistic wardens" turned air conditioners on in the cell area while prisoners where showering because the charge alleged no substantial harm to anyone.

■ Considering the totality of the circumstances, the court finds no injury which rises to the level of a constitutional violation. There is no question that defendant Burkhart neither intended to, nor did he cause any injury to plaintiff Dye. Thus, defendants are entitled to summary judgment on this issue.

Plaintiff Dye next contends that his transfer from housing unit number 7 to Northside Complex violated unspecified constitutional rights. He claims that the transfer was in retaliation for his filing the grievance against defendant Burkhart and that it resulted in a loss of educational, economic and rehabilitative opportunities.

Plaintiff Dye does not specifically argue that he was entitled to a hearing prior to transfer. In fact, plaintiffs' complaint, at paragraph 42, recognizes the unconditional right of prison officials to impose lateral transfers which do not involve an increase in the level of custody. In *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the Supreme Court held that no liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within a state, whether with or without a hearing, absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events. "To hold that any substantial deprivation imposed by prison authorities triggers the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that have traditionally been the business of prison administrators rather than of the federal courts." *Id.* at 225, 96 S.Ct. at 2538.

■ In this case, plaintiff Dye is protesting not a transfer to a different prison within the state, but a transfer to a different unit within the same facility. Neither M.C.L.A. § 791.265 nor Rule 791.4401 of the Michigan Administrative Code, which govern the transfer of prisoners in Michi-

gan, limit the discretion of prison officials regarding intra-state prison transfers. Applying the reasoning in *Meachum*, plaintiff Dye's complaint presents an issue even less appropriate for review by the federal judiciary. Referring to intra-state transfer, the *Meachum* court noted that "[t]ransfers ... are made for a variety of reasons and often involve no more than informed predictions as to what would best serve institutional security or the safety and welfare of the inmate." *Id.*

■ Moreover, plaintiff Dye's allegations are contradicted by the affidavits of defendants Taylor and Bailey which state that plaintiff was actually transferred to a lower custody level. According to defendant Taylor's uncontradicted affidavit, plaintiff Dye had been screened, cleared for, and placed on a waiting list for transfer from close to medium custody. His transfer was effectuated in compliance with the departmental policy of placing residents in the least restrictive level of custody and control. Thus, plaintiff did not even experience more burdensome conditions as a result of the transfer and therefore, cannot claim that he was subjected to disciplinary action in retaliation for filing his grievance. Prison officials have the authority to make such discretionary decisions regarding inmate transfers and therefore, plaintiff Dye's claim must be dismissed for failure to state a claim upon which relief can be granted.

The claim common to all plaintiffs is that prison officials subjected them to threats and harassment in retaliation for reporting and filing a grievance regarding the January 17th incident. Plaintiffs claim that the retaliatory conduct has deprived them of their First Amendment right of access to the courts.

■ "It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). That right must be "adequate, effective and meaningful." *Id.* at 822, 97 S.Ct. at 1495. In order to state a claim of constitutional deprivation, however, "it must first be shown that the pro-

ceeding involved access to the courts, *Kershner* [*v. Mazurkiewicz*], 670 F.2d [440] at 444, and that some actual injury, that is, an 'instance in which an inmate was actually denied access to the court,' *Id.*, has occurred." *Hudson v. Robinson,* 678 F.2d 462, 466 (3rd Cir.1982).

Addressing the issue of whether a prison's photocopying policy restricted an inmate's access to the courts, the Seventh Circuit held that the reasonableness of the policy "becomes relevant only after the prisoner has shown that the policy is impeding that access, for if it is unreasonable but not impeding he has not made out a *prima facie* case of violation of his constitutional rights." *Jones v. Franzen,* 697 F.2d 801, 803 (7th Cir.1983). *See also Kendrick v. Bland,* 586 F.Supp. 1536 (W.D.Ky. 1984). Applying this standard, the court will examine each plaintiff's claim individually.

■ A diligent reading of the complaint necessitates a finding that plaintiff Dye has failed to state a claim upon which relief can be granted because he has alleged no injury. He has pled no facts to indicate that his access to the courts was impeded. Plaintiff Dye does not allege that anyone threatened him. Rather, he bases his claim on the actions of defendant Taylor who "demanded" to see the grievance and the actions of defendant Trudell who repeatedly "suggested" that plaintiff drop the grievance.

■ It must be noted at the outset that plaintiff Dye did send his grievance to Lansing and it was acted upon. An investigation was commenced which resulted in defendant Burkhart being reprimanded and transferred. Thus, plaintiff cannot claim that he was denied access to the grievance procedure. Furthermore, plaintiff's claim alleges official interference only with his use of the prison grievance procedure. The First Amendment, however, protects an inmate's right of access to the *courts.* Plaintiff Dye has not alleged that anyone hampered his efforts to file a civil rights suit in district court. The action now before this court was filed in 1981 and has

proceeded without incident. A federal civil rights action does not require exhaustion of administrative remedies. *Houghton v. Shafer*, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968) (per curiam); *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam). Thus, regardless of whether defendant's actions inhibited pursuit of plaintiff's grievance, his access to the courts was unaffected.

The allegations of the remaining plaintiffs are equally without merit. None allege interference or reprisal as a result of filing a federal civil rights suit. Moreover, neither plaintiffs Martin-El, Henderson nor Hudson ever even filed a grievance. Plaintiffs Martin-El and Henderson merely executed written statements based on their witnessing of the incident and plaintiff Hudson's role was to assist plaintiff Dye in preparing the grievance.

Finally, the discipline allegedly imposed on plaintiffs which they characterize as retaliatory, was in each case, justifiable discretionary action. Plaintiff Martin-El recites one incident in which he was issued a ticket for the possession of non-dangerous contraband as the retaliatory action to which he was subjected. Yet, the complaint admits that plaintiff did indeed possess the contraband article. An allegation that the imposition of the appropriate disciplinary sanction for an admitted rule violation constitutes retaliation is frivolous.

Plaintiff Henderson's claim is premised on repeated searches of his person and his cell on January 21st. The uncontroverted affidavit of defendant Burkhart, however, states that plaintiff Henderson and a group of other inmates were searched because the odor of marijuana was emanating from the area in which they were located. Such a search is reasonable under the standard of *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). Clearly, the need for a "shakedown" under these circumstances outweighs the invasion of personal rights it entails. Additionally, the Supreme Court has held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, —— U.S. ——, ——, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393, 403 (1984). Therefore, even if plaintiff Henderson's cell was searched, the action does not state a cognizable constitutional claim.

Plaintiff Hudson's claim is based on vague allegations of "threatening remarks" directed at him by defendant Morris. He asserts that defendant Morris called him a "troublemaker" and in referring to plaintiff stated that "one day he will get his." Plaintiff Hudson admittedly *"take[s] this to mean"* the taking of his life. (emphasis added) Needless to say, this ascription of intent is conclusory. Even if the remark was made, there is nothing to connect the implied threat with plaintiff Hudson's role in prosecuting plaintiff Dye's grievance. Furthermore, there is no basis for plaintiff Hudson's interpretation of the remark as a murder threat. Although the court does not condone such remarks made by prison officials, it refuses to infer from such vague statements a violation of constitutional dimension.

The court having determined that plaintiffs in fact were not subjected to retaliatory action on the part of prison officials, it is unnecessary to address plaintiffs' claim that they were denied equal protection and due process of law by Attorney General Kelley. Plaintiffs being in no danger, the Attorney General was not derelict in his duty to protect them.

Finding no claim cognizable under the Constitution, the court need not address the defense of governmental immunity as to defendants Johnson, Mintzes, Trudell and Sholes.

For the foregoing reasons, IT IS HEREBY ORDERED that plaintiff's complaint and all pending motions be dismissed.

IT IS SO ORDERED.