**ROCHESTER MIDLAND CORPORATION, a New York corporation, Plaintiff,**

v.

**Daniel R. MESKO, Roger A. Mesko and Water–Wise, Inc., a Michigan corporation, jointly and severally, Defendants.**

**No. 88–CV–72143–DT.**

United States District Court, E.D. Michigan, S.D.

Oct. 4, 1988.

Bradley J. Schram, Bloomfield Hills, Mich., for plaintiff.

Donald J. Gasiorek, Lionel J. Postic, Southfield, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This action arises out of a former employment relationship between the individual Defendants and Plaintiff. Currently before the Court is Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the Plaintiffs' Complaint. *Davey v. Tomlinson,* 627 F.Supp. 1458, 1463 (E.D.Mich.1986); *Hudson v. Johnson,* 619 F.Supp. 1539, 1542 (E.D.Mich.1985). "In evaluating the propriety of a dismissal under Rule 12(b)(6), the factual allegations in the complaint must be treated as true." *Janan v. Trammell,* 785 F.2d 557, 558 (6th Cir.1986); *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). Plaintiffs' claims shall not be dismissed unless it is established that the Plaintiffs cannot prove beyond doubt any set of facts to support their claim that would entitle them to relief. *Janan,* 785 F.2d at 558.

## FACTS

Plaintiff produces and distributes chemical products for water treatment, disinfectants, insecticides and floor finishes. Plaintiff sells its water treatment products by performing laboratory analysis upon water systems of potential and existing clients, and soliciting sales based upon the results of the water analysis. Plaintiff referred a portion of its laboratory work to Defendant Water–Wise.

Defendant Roger Mesko became an officer and stockholder of Water–Wise without the knowledge or consent of Plaintiff. Defendant Daniel Mesko became a sales representative for Water–Wise while employed by Plaintiff. The Meskos' conduct violated the terms of their employment contract with Plaintiff.

In addition, the Meskos were soliciting business for Water–Wise from Plaintiff's customers and utilizing Plaintiff's confidential information and trade secrets throughout the term of the Meskos' employment and subsequent to the termination of their employment, also in violation of the Meskos' employment agreement.

Litigation between these parties commenced on October 19, 1987, when Rochester Midland filed a six-count verified complaint with this Court. A scheduling conference was held on January 20, 1988, wherein the Plaintiff indicated a desire to amend the complaint to state a RICO claim. 18 U.S.C. § 1961 *et seq.*

The Court orally granted Plaintiff 14 days leave to file an amended complaint. However, such amendment was not presented or filed within the time provided by the Court. On February 23, 1988, Plaintiff moved the Court for leave to file an amended complaint to state a RICO claim. This motion was denied on March 2, 1988, because Plaintiff failed to amend in the period previously allowed by the Court during the January 20, 1988, scheduling conference.

As a result, on May 10, 1988, Plaintiff filed the instant suit alleging two counts against the same defendants arising out of the same facts. Count I alleges a RICO claim. Count II alleges a claim for wrongful conversion of certain property of Rochester Midland, including large quantities of water treatment chemicals and sanor fluid.

The RICO claim incorporates the facts previously set forth in this Opinion and further alleges:

49. Roger A. Mesko and Daniel R. Mesko furthered their scheme to defraud Rochester Midland by repeatedly utilizing the United States Postal System for correspondence between and among Water–Wise, Rochester Midland, Roger A. Mesko, Daniel R. Mesko and current and former customers of Rochester Midland and Water–Wise. Roger A. Mesko and Daniel R. Mesko also utilized the telephone lines to contact Rochester Midland customers in Ohio on behalf of and for the benefit of Water–Wise while still employed at Rochester Midland.

50. Upon information and belief, Roger A. Mesko and Daniel R. Mesko, without the approval of Rochester Midland, unlawfully transported property of Rochester Midland including water treatment chemicals and sanor fluid, valued at more than Five Thousand ($5,000.00) Dollars, to Roger A. Mesko's home in Pinckney, Michigan and sold this property on behalf of and for the benefit of himself and Water–Wise without paying for same in violation of 18 U.S.C. § 2315.

51. Upon information and belief, Roger A. Mesko and Daniel R. Mesko and Water–Wise removed products from the premises of Rochester Midland's Ferndale office without paying for same and subsequently sold such products to third parties, many of which were former or current customers of Rochester Midland.

52. Funds acquired through the fraudulent and racketeering activities of Roger A. Mesko, Daniel R. Mesko and Water–Wise were used in the operation of Water–Wise in violation of 18 U.S.C. § 1962(a).

53. Roger A. Mesko and Daniel R. Mesko utilized income generated by their racketeering activities to operate and further the business of Water–Wise in violation of 18 U.S.C. § 1962(a).

54. Roger A. Mesko and Daniel R. Mesko maintained control of Water–Wise through a pattern of racketeering activity, including several acts of mail and wire fraud, in violation of 18 U.S.C. § 1962(b).

55. All Defendants, together with Syed Ali and Michael Bromley, constituted the enterprise through which Roger A. Mesko and Daniel R. Mesko conducted the pattern of racketeering activity de-

scribed above in violation of 18 U.S.C. § 1962(c).

56. Roger A. Mesko and Daniel R. Mesko conspired with each other and with Syed Ali and Michael Bromley to violate 19 U.S.C. §§ 1962(a)–(c) in violation of 18 U.S.C. § 1962(d).

Defendants move to dismiss the RICO claim.

## OPINION

### A. Default

The instant motion was filed on July 13, 1988. Shortly before this motion was filed, the Clerk of the Court entered a default against the Defendants. This default has not been set aside. Plaintiff submits that since the Defendants are in default, the relief sought by this motion must be denied.

"For good cause shown the court may set aside an entry of default...." Fed.R. Civ.P. 55(c). The existence of a meritorious defense may be good cause to set aside a default. Finding merit in Defendants' motion to dismiss, the default entered against Defendants is hereby set aside.

### B. RICO

■ To state a claim under RICO, the Plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, thereby causing injury to the Plaintiffs' business or property. *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Defendants argue that Plaintiff has failed to properly allege a pattern of racketeering activity.

In *Sedima*, the Supreme Court invited courts to develop rigorous standards for what constitutes a pattern of racketeering activity:

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two

acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.*, at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States*, 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975).

*Sedima*, 105 S.Ct. at 3285 n. 14. An overwhelming majority of courts have since been reviewing the RICO pattern requirement with greater scrutiny.

Some courts have interpreted the pattern requirement more narrowly than others. The Eighth Circuit has held that a pattern of racketeering activity does not exist where several acts of racketeering activity are performed in furtherance of a single illegal scheme. *Superior Oil Co. v. Fulmer*, 785 F.2d 252 (8th Cir.1986). The

Eighth Circuit reasoned that a single illegal scheme cannot, as a matter of law, display the requisite degree of "continuity plus relationship" to form a pattern of racketeering activity. Generally, the trend in this district has been to follow the Eighth Circuit's view. *In re Evening News Assoc. Tender Offer Litigation*, 642 F.Supp. 860 (E.D.Mich.1986); *McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.*, 644 F.Supp. 580 (E.D.Mich. 1986); *Zahra v. Charles*, 639 F.Supp. 1405 (E.D.Mich.1986). *But see Four Star Corp. v. Clink*, Slip Op. 86–1864 (E.D.Mich. July 9, 1987).

Most courts, however, have not interpreted the *Sedima* dictum as narrowly as the Eighth Circuit. See *e.g. Albany Insurance Co. v. Esses*, 831 F.2d 41 (2nd Cir.1987); *Barticheck v. Fidelity Union Bank/First Nat. State*, 832 F.2d 36 (3rd Cir.1987); *Bank of America v. Touche Ross*, 782 F.2d 966 (11th Cir.1986). These Courts have held that a pattern of racketeering activity may be established even where the illegal activity is in furtherance of a single scheme. Under this view, the Court must review RICO claims case by case and determine whether the alleged illegal conduct demonstrates a sufficient degree of "continuity plus relationship" to establish a pattern of racketeering activity.

The Sixth Circuit has not addressed the issue.

■ This Court is inclined to follow the trend established in this district and adopted by the Eighth Circuit, and hold that racketeering activity that occurs in furtherance of a single illegal scheme cannot, as a matter of law, constitute a pattern of racketeering activity.

This holding is of little consequence, however, since Plaintiff's claim fails to suf-ficiently plead a pattern of racketeering activity under either standard.

■ The Complaint alleges but a single scheme to turn Water–Wise, Inc., into a successful business at the expense of Plaintiff. Plaintiff's inability to allege multiple schemes is fatal to its RICO claim under the multiple scheme approach.

Accepting for purposes of this motion that a RICO claim may be maintained upon allegations of a single scheme, the Court finds that the RICO claim asserted by Plaintiff remains defective. The Court has reviewed the particular facts alleged by Plaintiff and concludes that the scheme does not reflect the continuity of racketeering activity necessary to form a pattern of racketeering activity.[1]

The acts of racketeering activity alleged in the instant case are clearly related in that they were committed in pursuit of a single goal and to the detriment of a single plaintiff. Thus, the continuity factor is determinative of this case.

To determine whether the conduct presents a continued threat, a reviewing court should consider whether the activity has a defined finite purpose. If the illegal scheme is well defined and is short in duration and the racketeering activity is likely to cease once the Defendants' scheme has run its course, there is little or no threat of continuity. By contrast, if the illegal scheme lacks definition, or the scheme is likely to endure for an extended period of time, or, if upon accomplishment of its objective, the racketeering activity is likely to continue, then there is a continuing threat of racketeering activity of the type that RICO is designed to deter.[2]

Consideration should also be given to the variety of racketeering activity allegedly

---

1. In reviewing the continuity plus relationship factors, a reviewing court should always consider the remedial purposes and the legislative intent of the statute. RICO is a criminal statute with civil provisions. The legislative intent of RICO is to prevent the infiltration of organized crime into legitimate business. To accomplish this goal, Congress implemented expansive language and mandated that the statute be liberally construed. Application of RICO in this manner deters racketeering activity at its inception,

thereby denying organized crime the opportunity to infiltrate legitimate business.

2. Consideration of the duration and purpose of the illegal scheme should not be confused with the "open-ended" requirement rejected by the Third Circuit. See *Barticheck v. Fidelity Union Bank/First Nat. State*, 832 F.2d 36 (3rd Cir. 1987). The Third Circuit rejected the notion that continuity required a finding that the scheme be open-ended. This Court is not adopting the open-ended requirement. Rather, this

committed by the Defendant. RICO defines racketeering activity as action related to any one of numerous acts prohibited by state and federal law.[3] These prohibited activities, commonly called predicate acts, involve conduct traditionally associated with organized crime. The greater the variety of predicate acts allegedly committed by the defendant, the greater the threat that the activity is likely to continue. Such a widespread network of various types of racketeering activity would be attractive to organized crime. This fact alone makes this activity a continuing threat.

Applied in the instant case, the Court finds that the scheme alleged by Plaintiff lacks the threat of continuity necessary to establish a pattern of racketeering activity. The scheme was finite in duration, i.e. when Water–Wise became established, the wire and mail fraud would cease. Plaintiff fails to allege that there exists any threat of continuing racketeering activity.

The Court also notes that the scheme alleged by Plaintiff encompasses but a single type of racketeering activity: mail and wire fraud.[4] No other predicate act is alleged to have been committed by the Defendant.[5] Accordingly, there is no indication that the racketeering activity was likely to attract organized crime or continue beyond the scope of its limited objective.

Court finds that the notion of continuity requires examination of the anticipated duration and purpose of the scheme. Whether the scheme is open-ended is irrelevant to the analysis applied in this case.

3. 18 U.S.C. § 1961(1) defines racketeering activity as:

(1) "racketeering activity" means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), section 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2320 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States, or (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act;

4. This Court finds that RICO allegations involving mail and wire fraud constitute a single type of racketeering activity.

5. Plaintiff alleges that the Defendants violated 18 U.S.C. § 2315(a) by converting Plaintiff's property and transporting it to Roger Mesko's home in Pinckney, Michigan. Complaint ¶ 50. 18 U.S.C. § 2315 provides, in relevant part:

Whoever receives, possesses ... [or] sells any goods ... of the value of $5,000 or more ... *which have crossed a State or United States boundary after being stolen....* Shall be fined not more than $10,000 or imprisoned not more than 10 years, or both. (Emphasis added.)

Plaintiff does not allege that the goods in question crossed state lines after being stolen. Thus, Plaintiff has failed to allege a claim with respect to racketeering activity related to 18 U.S.C.

Plaintiff's allegations simply fail to allege a pattern of racketeering necessary to sustain a RICO cause of action.

For the above stated reasons, Defendants' motion to dismiss the RICO claim is hereby GRANTED.

### C. Wrongful Conversion

Defendants' motion to dismiss does not address the claim of wrongful conversion. The wrongful conversion claim in the second complaint alleges that Plaintiff's water treatment products were wrongfully converted. The first complaint contains a claim for the wrongful conversion of confidential and proprietary property. Since these claims are distinct, and Defendant has not stated any reason to dismiss the second claim, the Court shall consolidate the second wrongful conversion claim with the claims asserted in the first complaint.

### D. Imposition of Sanctions

Defendant asserts that Rule 11 sanctions should be imposed against Plaintiff because there existed no basis for the RICO claim and because the complaint was interposed for an improper purpose.

■ The federal courts have struggled for more than five years over what constitutes a civil RICO claim. As of this date, the issue remains unresolved. Rule 11 sanctions should not be imposed for the filing of an unsuccessful claim in an area of law as undecided as civil RICO unless the filing is patently without merit. Such is not the case at bar. Accordingly, the Court declines to impose sanctions for the filing of a RICO claim.

■ Defendant also asserts the second complaint was filed to protract the litigation. Plaintiff submits that defense counsel was not available to stipulate to a proposed order allowing leave to file the amended complaint. Thus, Plaintiff was unable to obtain an order to allow the filing of the amended complaint within the time permitted by the Court. Since the Court had granted leave to amend during the scheduling conference, there was no need

to seek consent from opposing counsel. This error in judgment, however, does not rise to the level of bad faith necessary to impose Rule 11 sanctions. Accordingly, Defendants request for sanctions is denied.

### CONCLUSION

For the above stated reasons, the Court hereby sets aside the clerk's entry of default entered in this matter; GRANTS Defendants' motion to dismiss the RICO claim; consolidates case number 88–CV–72143–DT with case number 87–CV–73804–DT; and denies Defendants' request for sanctions.

IT IS SO ORDERED.

---

§ 2315. In any event, Plaintiff's alleged pattern of racketeering activity fails to allege that the pattern included acts in violation of 18 U.S.C. § 2315. See Complaint ¶ 54.