**John FRY, Gary Larcinene, Auburn Corporation, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Frank Kelley, Richard A. Austin, Frederick J. Pirochta, Fairfax Corporation, Transmissions By Lucille, Frederick Huffaker, Lucille Treganowan, Michael Hirschman, David Collins, Michelle Fisher, Defendants.**

**No. 89–CV–70685–DT.**

United States District Court, E.D. Michigan, S.D.

Dec. 19, 1989.

Cyril C. Hall, Pontiac, Mich., for plaintiffs.

Thomas A. Gottschalk, Washington, D.C., Julius L. Russu, GM Corp., GM Legal Staff, Detroit, Mich., Ronald W. Emery, Tort Defense Div., Lansing, Mich., for defendants.

OPINION AND ORDER

DUGGAN, District Judge.

This is, in part, a civil RICO action. *See* the Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. § 1961 *et seq.* The RICO claim arises from the investigation and subsequent administrative prosecution of certain transmission repair chains including an American Transmission franchise owned by plaintiff Au-

burn Corporation (hereinafter "Auburn").[1] Such chains were accused of (and, ultimately, convicted of) consumer fraud. *See In re American Transmissions, Roseville*, No. 86–30–RH (Mich. Dep't of State, Feb. 17, 1989). Plaintiffs presently maintain, in essence, that defendant General Motors Corporation ("GM"), in concert with the other named defendants, sought to wrongfully eliminate franchised transmission repair facilities thereby limiting GM's obligations under a Federal Trade Commission consent agreement. (Pursuant to such consent agreement, plaintiffs observe, car owners who experienced problems with GM–built transmissions were reimbursed by GM for repair costs incurred. Plaintiffs additionally observe that many repair facilities, including the American Transmission franchise involved here, regularly informed customers of their rights under the consent agreement.) In furtherance of the allegedly planned elimination of the repair facilities, plaintiffs charge that

> investigations were designed [*i.e.*, "rigged" or "fixed"] and conducted to necessarily find plaintiffs and other franchise transmission repair operators violative of Michigan law and to further entrap the Plaintiff and others in disregard to Plaintiffs' innocence ... [thus advancing] Defendant General Motors' unlawful purposes and ... the individual political interests of the Defendant [State of Michigan] officials.

Plaintiffs' brief in response to defendants' motions to dismiss, now pending before the Court, at p. 4.

As alluded to above defendants[2], albeit by separate motions, now move to dismiss plaintiffs' RICO claim and pendent state law claims. Simply put, defendants contend that, among other defects, plaintiffs'

complaint fails to state a "pattern" of racketeering activity, an element necessary to relief under RICO. Alternatively, defendants argue that plaintiffs' RICO claim collaterally attacks the state administrative proceedings; accordingly, the argument continues, because plaintiffs' allegations of misconduct were considered and rejected in such prior adjudication, the doctrine of collateral estoppel (invoked by some defendants) or *res judicata* (invoked by the remainder) bar their relitigation here. Finally, noting that it is plaintiffs' RICO claim which confers subject matter jurisdiction, defendants urge this Court, in the event it dismisses the RICO claim, to dismiss as well plaintiffs' pendent state law claims under the rule announced in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966): "Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed...." *Id.* at 726, 86 S.Ct. at 1139 (footnote omitted). For the reasons expressed below, the Court agrees that, measured by the applicable standard of Fed.R.Civ.P. 12(b)(6), plaintiffs have not sufficiently pled a RICO claim. Such claim, then, together with the pendent state law claims, must be dismissed.

A 12(b)(6) motion tests the legal sufficiency of a complaint, not the facts that support it. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1356, p. 590 (West 1969). In practice, then,

> [w]hen evaluating a motion to dismiss brought pursuant to rule 12(b)(6), the factual allegations in the complaint must be regarded as true. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.* 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–349, 15 L.Ed.2d 247 (1965). The claim should not be dismissed unless

---

**1.** Plaintiff John Fry was owner and officer of Auburn; plaintiff Gary Larcinene, according to the complaint, was "manager and inchoate owner" of Auburn.

**2.** In addition to GM, plaintiffs' complaint specifically names the following as party defendants: (1) Frank Kelley, Michigan's Attorney General and the "prosecutor" in the underlying administrative proceedings; (2) his assistant, Frederick Huffaker; (3) Richard Austin, Michigan's Secre-

tary of State, the final administrative decisionmaker; (4) his designated investigator, Frederick J. Pirochta; (5) Transmissions By Lucille, an out-state transmission shop which furnished transmissions for investigators to use; (6) the Fairfax Corporation, who, plaintiff charges, wrote misleading cover stories; and (7)–(10) individual employees of GM, namely, David Collins and Michelle Fisher; the Fairfax Corporation, Michael Hirschman; and Transmissions By Lucille, Lucille Treganowan.

it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). *See also Dugan v. Brooks,* 818 F.2d 513, 516 (6th Cir.1987), *citing Windsor.* Applying this accepted rule, that is, viewed in a light most favorable to plaintiffs and resolving every doubt in their behalf, the Court is nonetheless of the opinion that an actionable RICO claim has not been stated.

As summarized in *H.J. Inc. v. Northwestern Bell Telephone Co.,* — U.S. —, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989),

> RICO renders criminally and civilly liable "any person" who uses or invests income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a); who acquires or maintains an interest in or control of such an enterprise "through a pattern of racketeering activity," § 1962(b); who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs "through a pattern of racketeering activity," § 1962(c); or, finally, who conspires to violate the first three subsections of § 1962, § 1962(d).

Here, plaintiffs rely on the prohibitions of subsections (c) and (d) as bases for recovery. To recover, plaintiffs must plead (and, ultimately, prove) a "pattern of racketeering activity" which, as enacted by Congress,

> requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity[.]

18 U.S.C. § 1961(5).[3] Here, assuming for argument's sake that two predicate acts

have been committed, *H.J. Inc., supra* nevertheless teaches that a "pattern" is wanting.

Construing the term "pattern" as used in section 1961(5), the *H.J. Inc.* court initially observed:

> Section 1961(5) does indicate that Congress envisioned circumstances in which no more than two predicates would be necessary to establish a pattern of racketeering—otherwise it would have drawn a narrower boundary to RICO liability, requiring proof of a greater number of predicates. But, at the same time, the statement that a pattern "requires at least" two predicates implies "that while two acts are necessary, they may not be sufficient." *Sedima* [*v. Imrex Co., Inc.*], *supra,* [473 U.S. 479] at 496, n. 14, 105 S.Ct. [3275] at 3285, n. 14 [87 L.Ed.2d 346]; [ (1985) ] *id.,* at 527, 105 S.Ct. [at] 3289 (Powell, J., dissenting). Section 1961(5) concerns only the minimum *number* of predicates necessary to establish a pattern; and it assumes that there is something to a RICO pattern *beyond* simply the number of predicate acts involved.

109 S.Ct. at 2899–2900. Because, as the Court indicated, "§ 1961(5) does not identify ... [the] additional prerequisites for establishing the existence of a RICO pattern[,]" *id,* at 2900, the legislative history of RICO was reviewed. In this vein, the Court wrote:

> RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.

*Ibid.* (Emphasis in original.)

In this Court's opinion, the "continued criminal activity" language quoted above disposes of plaintiffs' RICO claim. The following passage is instructive:

---

**3.** The "acts of racketeering activity", or, as more commonly known, predicate acts, referred to above are listed in section 1961(1). In the instant case, plaintiffs' complaint makes repeated reference to (without further elaboration) acts of mail and wire fraud and the alleged bribery of the state officials.

**458**

"Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *See Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36, 39 (CA3 1987). It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated. See S.Rep. No. 91–617, at 158.

Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case. Without making any claim to cover the field of possibilities—preferring to deal with this issue in the context of concrete factual situations presented for decision—we offer some examples of how this element might be satisfied. A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit. Suppose a hoodlum were to sell "insurance" to a neighborhood's storekeepers to cover them against breakage of their windows, telling his victims he would be reappearing each month to collect the "premium" that would continue their "coverage." Though the number of related predicates involved may be small and they may occur close together

in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity. In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business. Thus, the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. Such associations include, but extend well beyond, those traditionally grouped under the phrase "organized crime." The continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO "enterprise."

109 S.Ct. at 2902 (emphasis in original; footnote omitted).

Applied to the matter at bar, the guideposts of *H.J. Inc.* lead this Court to conclude that "continuity" is lacking. The acts plaintiffs complain of began "in December, 1985 and climaxed [in] August, 1986 when [defendant Austin] revoked the licenses of 13 transmission shops, including Plaintiff's." Complaint, at paragraph 29. Involving, then, only short-term conduct, it is incumbent on plaintiffs to include allegations evidencing a *threat of future criminality.* In this Court's opinion, a fair reading of plaintiffs' complaint does not suggest the threat of future criminality.

▮▮▮▮▮ Contrary to the inferences drawn in *H.J. Inc.,* which similarly involved allegations of bribery, this Court cannot reasonably infer that, to paraphrase the *H.J. Inc.* opinion, the *alleged* bribes [4] were a regular way of conducting GM's ongoing business, or were regularly accepted by state officials. "[U]pon accomplishment of [GM's]

**4.** Defendants argue at some length that plaintiffs' allegations fail to "meet the basic elements of a bribery claim...." Nongovernment defendants' brief in support, at p. 19. For present purposes, the Court *assumes* that bribes were in fact offered and accepted.

objective," *see Rochester Midland Corp. v. Mesko,* 696 F.Supp. 262, 266 (E.D.Mich. 1988), that is, the elimination of transmission repair shops (and a corresponding limitation of GM's liability under the FTC consent decree), the alleged racketeering activity will have "r[a]n its course[.]" *Ibid.* Relatedly, the opportunity for political gain will also have ceased. This Court, then, shares the views expressed by Judge Zatkoff in *Rochester Midland Corp., supra:*

> To determine whether the conduct presents a continued threat, a reviewing court should consider whether the activity has a defined finite purpose. If the illegal scheme is well defined and is short in duration and the racketeering activity is likely to cease once the Defendants' scheme has run its course, there is little or no threat of continuity. By contrast, if the illegal scheme lacks definition, or the scheme is likely to endure for an extended period of time, or, if upon accomplishment of its objective, the racketeering activity is likely to continue, then there is a continuing threat of racketeering activity of the type that RICO is designed to deter.
>
> Consideration should also be given to the variety of racketeering activity allegedly committed by the Defendant. RICO defines racketeering activity as action related to any one of numerous acts prohibited by state and federal law. These prohibited activities, commonly called predicate acts, involve conduct traditionally associated with organized crime. The greater the variety of predicate acts allegedly committed by the defendant, the greater the threat that the activity would be attractive to organized crime. This fact alone makes this activity a continuing threat.

*Id.* at 266–267 (footnotes omitted).

In sum, based on *H.J. Inc.,* plaintiffs' RICO claim must be dismissed. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity requirement of a RICO "pattern"]." 109 S.Ct. at 2902.

■ Apart from plaintiff's failure to allege a "pattern of racketeering activity"

within the meaning of 18 U.S.C. § 1961(5), as interpreted by *H.J. Inc.,* the Court agrees with defendants that the state administrative factfinding must be given preclusive effect. As instructed in *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986),

> when a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate," *[U.S. v.] Utah Construction & Mining Co., supra,* 384 U.S. [394] at 422 [86 S.Ct. 1545 at 1560, 16 L.Ed.2d 642 (1966)] federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.

478 U.S. at 799, 106 S.Ct. at 3226 (footnote omitted).

Here, plaintiffs defended the charges brought in the underlying administrative proceedings by, as defendants accurately describe, "attacking the integrity of the State's investigation." In short, such attack was rejected; specifically rejected were contentions that GM's assistance was improper, that the transmissions used in the undercover investigation were unreliable or inadequate, and that plaintiffs were entrapped. These contentions presently form the *core* of plaintiffs' RICO claim. To allow plaintiffs the opportunity to *relitigate them before this Court* is simply impermissible. The concerns identified in *Elliott, supra,* namely, the erosion of federalism, the risk of inconsistent results, *etc.,* apply with equal force here.

In a late-filed brief, plaintiffs maintain that "[i]n the underlying action ..., it was never ... resolved whether Defendants were involved in bribery schemes and other racketeering activity." Brief in opposition, at p. 10. While true, such contention nevertheless does *not* counsel against this Court's conclusion that the underlying administrative proceedings must be afforded preclusive effect. Again, as stated above, the allegations forming plaintiffs' RICO claim have been resolved (adversely, the Court adds, to plaintiffs). That plaintiffs

did not attach a RICO label to their allegations below is plainly inconsequential.

Faithful to *Elliott, supra,* then, this Court "must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. at 799, 106 S.Ct. at 3226 (footnote omitted). As construed by this Court, Michigan law would afford preclusive effect to the administrative proceedings below. *See Senior Accountants, Analysts & Appraisers Ass'n v. City of Detroit,* 399 Mich. 449, 249 N.W.2d 121 (1976). Accordingly, plaintiffs' RICO claim is subject to dismissal on alternate grounds, *i.e.,* on grounds other than the "pattern" defect discussed above. The factual issues determined below and necessary to plaintiffs' RICO claim may not now be relitigated.[5]

Having dismissed the RICO claim, the Court hereby dismisses plaintiffs' pendent state claims pursuant to *Gibbs, supra. See also Province v. Cleveland Press Publishing Co.,* 787 F.2d 1047, 1055 (6th Cir.1986) ("[t]hrough a series of cases following *United Mine Workers [v. Gibbs],* this circuit has adopted the position that the district courts have minimal discretion to decide pendent state law claims on the merits once the basis for federal jurisdiction is dismissed before trial") (citation omitted).

For the reasons stated,

IT IS ORDERED that defendants' Motions to Dismiss are GRANTED.

---

**5.** Other than the contention that the proceedings below never resolved a RICO claim *per se,* considered and rejected above, plaintiffs make no argument to the effect that the state courts of Michigan would deny preclusive effect.